UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RSEP HOLDING, LLC,

    Plaintiff,

    v.

ZURICH MEADOWS SENIOR
APARTMENTS, L.P., CAREFREE
DEVELOPMENT, LLC, and PHIL
MOELLER,

    Defendants.

No. 09 C 1044
Judge James B. Zagel

# MEMORANDUM OPINION AND ORDER

## I. Introduction and Factual Background

This dispute arises out of a real estate development that has been slowed due to economic conditions impacting the capital markets in general and Low Income Housing Tax Credit syndication in particular. Plaintiff RSEP Holding, LLC ("RSEP") and Zurich Meadows Apartments, LLC are the limited and general partners, respectively, in Defendant Zurich Meadows Senior Apartments, L.P. ("Zurich"), a limited partnership formed for the purpose of developing, building, and operating a senior living facility for low to moderate income senior citizens. Zurich was awarded an allocation of federal tax credits from the Illinois Housing Development Authority ("IHDA") as well as other state and local government loans to fund the project.

On or about December 14, 2007, RSEP lent the principal sum of $660,000.00 to Zurich pursuant to the terms of a Promissory Note (the "Note"). At the same time, repayment of the indebtedness, as evidenced by the Note, was unconditionally guaranteed by Defendants Carefree

Development, LLC and Phil Moeller pursuant to a Guarantee Agreement. RSEP claims that the Note matured on August 1, 2008. Having performed its part of the terms and provisions of the Note, RSEP demanded payment from Zurich, including the principal sum plus accrued interest in the amount of $125,825.47 for a total of $785,825.47, as well as continuing interest at the per diem rate of $389.99 from May 15, 2009 until the date of final judgment. It is undisputed that Defendants have not paid these sums to RSEP. RSEP filed a three-count complaint for breach of the Note and of the agreements with Carefree and Moeller guaranteeing the Note. RSEP also seeks $10,615.75 in attorneys' fees and $1,076.00 in expenses, bringing the aggregate sum to $797,517.22. RSEP now moves for summary judgment.

Defendants dispute that any sums are now due and owing on the Note and provide a bit more by way of undisputed background in support of their view.[1] On or around September 8, 2007, Red Stone Equity Partners, LLC entered into a letter agreement ("Commitment Letter") dated August 29, 2007 (on the cover) and June 25, 2007 (on each subsequent page) with Moeller and Zurich for the development and construction of Zurich Meadows Senior Apartments, a proposed affordable senior housing project in Lake Zurich, Illinois (the "Project"). The Project had received an allocation of federal low-income tax credits from the IHDA. The Commitment Letter provided the terms under which Red Stone (through its affiliate, RSEP) would become a limited partner in Zurich in exchange for providing funding to the Project in the form of a $9,066,598.00 capital contribution. In essence, RSEP would purchase from Zurich, at a discount,

---

[1] As explained in further detail below, RSEP basically does not dispute the additional facts set forth by Defendants, other than to insist that the documents on which Defendants rely speak for themselves. Rather, RSEP contends that the additional facts and documents ought to be barred from consideration under the parol evidence rule.

2

$9,750,000.00 in federal tax credits (hoping to sell them later at a profit). RSEP would pay Zurich for the tax credits through a series of capital contributions upon being admitted as a limited partner.

Pending completion of a Partnership Agreement, which would be executed upon the closing of the purchase of the land to be used as the development site, RSEP advanced part of its capital contribution as a "pre-development loan" in the amount of $660,000.00 to be used in the purchase of the land. Defendants maintain that this transaction was to be treated as a loan until RSEP was admitted to the partnership, at which time the loan would convert to equity. (RSEP cites to separate portions of the Partnership Agreement, paragraph 6(h) and 7(a), which it says indicate that the transaction between the parties was intended to be that of a loan).

On December 14, 2007, Zurich purchased the land for the site of the Project using, in part, the pre-development loan. On that same date, RSEP executed the Partnership Agreement, which requires that the terms of the Commitment Letter be incorporated into the final agreement between the parties. According to Zurich, the parties intended that RSEP would be credited for the $660,000.00 as a capital contribution at closing on the construction loan, at which time RSEP would fund its first scheduled capital contribution pursuant to paragraph four of the Commitment Letter. The amount of that contribution would therefore be reduced by the $660,000.00 credit, bringing the first capital contribution payment down to $1,606,650.00 (from $2,266,650.00). Defendants also mention that the principals of the parties in this case have followed the same methodology in other, similar transactions. In each case, the pre-development loan was converted to equity at the time of construction closing.

On June 27, 2008 RSEP wrote to Moeller stating that its "June 25, 2007" letter of interest had "expired" and that the downturn in the capital markets had adversely affected the profitability of the sale of tax credits.

## II. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has set forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## III. Discussion

The thrust of the inquiry here revolves around a single, central determination: is the relationship between the parties that of lender/borrower or investor/investee?

RSEP makes two basic arguments in support of its motion for summary judgment. First, RSEP contends that the parol evidence rule bars me from considering the terms of the Commitment Letter or of the Partnership Agreement. Second, even considering the Commitment Letter and the Partnership Agreement, RSEP disputes that the $660,000.00 loan was ever intended by the parties to be a capital contribution.

*A. Ambiguity bars application of parol evidence rule*

RSEP argues that the Commitment Letter, the Partnership Agreement, and the parties' transacting history, on which Defendants rely, constitute extrinsic evidence that I ought not to consider in conjunction with the Note, which unequivocally and unambiguously outlines the terms of repayment and the rights of RSEP as a lender upon the borrower's default. Under the parol evidence rule, evidence of a prior or contemporaneous agreement may not be admitted to vary the terms of a complete, certain, and unambiguous instrument. *Basu v. Stelle*, 603 N.E.2d 1253, 1256 (Ill. App. Ct. 1992). The threshold inquiry for application of the rule is whether the writing was intended by the parties as a final and complete expression of the entire agreement. *Chicago White Metal Casting*, *Inc. v. Treiber*, 517 N.E.2d 7, 12 (Ill. App. Ct. 1987). If the face of the Note indicates no ambiguity regarding the parties' intent that the writing be the complete expression of the entire agreement, the parties are bound by that writing. *Quake Construction, Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). On the other hand, if the terms of the Note are ambiguous or capable of more than one interpretation, parol evidence is admissible to ascertain the parties' intent. *Id.*

RSEP relies, primarily, on paragraph six of the Note, which, in pertinent part states:

"The loan shall be due on the earliest of (i) the date on which Borrower receives the first installment of capital contribution from Investor pursuant to the terms of an amended and restated agreement of limited partnership, (ii) April 1, 2008, or (iii) the occurrence of any . . . Default." A subsequent Allonge to the Note, executed on April 16, 2008, moved the date under section (ii) to August 1, 2008.

Citing to this paragraph of the Note, RSEP makes the following argument: RSEP never received any installment of capital contribution from Zurich. As such, the Note matured according to its terms on August 1, 2008.

The problem with RSEP's argument is apparent on the face of its brief. When citing to paragraph six of the Note, RSEP inserts bracketed text after the words "Borrower" and "Investor" as follows: "(i) the date on which Borrower **[RSEP]** receives the first installment of capital contribution from Investor **[Zurich]** pursuant to the terms of an amended and restated agreement of limited partnership." (emphasis added). The first paragraph of the Note, however, identifies Zurich, not RSEP, as the "Borrower" and identifies RSEP as the "Lender." "Investor" is not identified anywhere in the document. Thus, the first section under paragraph six states that the Loan shall be due on the "date on which [Zurich] receives the first installment of capital contribution from Investor pursuant to the terms of an amended and restated agreement of limited partnership."

I find that ambiguity on the face of the Note bars application of the no parol evidence rule. The Note references "Investor" without defining who the Investor is. Counsel for RSEP indicated at the last status hearing that there was an error in the briefs and that RSEP mistakenly flip-flopped RSEP and Zurich in the bracketed text. If that were the case, then RSEP would be

substituted for the term "Investor" in section (i) of paragraph six of the note. And if that were so, then that would seem to support Defendants' argument about the nature of the relationship between the parties and their conclusion that the pre-development loan converted to equity upon the construction closing. In addition, the same section in paragraph 6 of the Note conditions Zurich's receipt of the first installment of capital contribution from Investor pursuant to the "terms of an amended and restated agreement of limited partnership." This reference indicates that the Note is not the final and complete expression of the entire agreement between the parties because the date on which the Loan is due depends, in part, upon the terms of an agreement contained in a separate document.

For these reasons, I find the rule which bars parol evidence inapplicable, and I will consider the parol evidence submitted by Defendants as evidence of the parties' intent.

*B. The disputed nature of RSEP's $660,000 pre-development loan*

The Note, together with the Commitment Letter, Partnership Agreement, and course of dealing between the parties, raises sufficient questions of fact to preclude summary judgment for RSEP. The $660,000 was paid simultaneous with RSEP's admission to the partnership as a limited partner. Paragraph twelve of the Commitment Letter provides that the $660,000.00 "pre-development loan will convert to equity upon the earlier to occur of (i) partnership closing, or (ii) January 1, 2008." Section seven of the Partnership Agreement indicates that the parties intend to incorporate the terms of the Commitment Letter into the final agreement between them.

Defendants rely on *Kramer v. McDonald's System, Inc.*, 396 N.E.2d 504 (Ill. 1979), in support of its argument that RSEP's loan converted to equity upon RSEP becoming a limited partner in Zurich. In *Kramer*, the court found that the $90,000 provided by Kramer was intended

7

by the parties as a capital contribution to the limited partnership even though the payment of the sum was evidenced by a note that described it as a loan. The court emphasized the fact that the $90,000 was paid at the time of the formation of the partnership and thereafter held that the promissory note was unenforceable. In this case, too, the $660,000 was paid simultaneous with RSEP's admission to the partnership as a limited partner. And, as the Commitment letter states, those funds were to be treated as equity upon admitting RSEP to the partnership. Other than the $660,000.00 pre-development loan, RSEP provided no other funds, services, or anything of value to the Partnership. A limited partnership is, by definition, an investment, whereby a limited partner's risk is limited to his contribution of capital. I accept, for now, Defendants argument that there would be no point of admitting RSEP to the partnership if the $660,000 was simply a loan.

On the other hand, the Partnership Agreement provides:

> <u>Loans By a Partner</u>. Loans by a Partner to the Partnership shall not be considered Capital Contributions for the purposes of this Agreement, and shall not increase such Partner's Capital Account or entitle such Partner to any greater share of the Net Profits, Net Losses or distributions of the Partnership than such Partner is otherwise entitled to under this Agreement.

And the next paragraph states:

> <u>Loan</u>. Concurrently with the execution hereof, RSEP Holding, LLC is making a loan to the Partnership pursuant to a Loan Agreement in the amount of $660,000.00 in connection with the purchase of the Property by the Partnership (the "Loan").

This language apparently negates Defendants' argument that the money was given by RSEP as a capital contribution because it expressly states that it was made as a "loan." However, even though RSEP cites to the Partnership Agreement that was attached by Defendants, RSEP

further argues that the Partnership Agreement contemplated by the Commitment Letter is a different document than the one which Defendants attached. The Partnership Agreement provides:

> The General Partner and the Limited Partner hereby agree to negotiate an amended and restated partnership agreement for the Partnership which shall include as an Exhibit thereto an approved development budget and shall contain the terms and conditions of that certain commitment letter dated August 29, 2007, from an affiliate of the Limited Partner to the General Partner.

I have already determined that it is necessary to consult parol evidence to determine the intent of the parties. If RSEP disputes the veracity of the parol evidence currently in the record before me, I certainly cannot grant summary judgment for RSEP on that ground alone.

In addition, Defendants have provided evidence, by way of affidavit, of a course of dealing between the parties, or at least the principals of the parties, which supports Defendants' view that the pre-development loan converted to equity once RSEP was admitted to the partnership. Defendant Moeller, as principal of Defendant Carefree, had done several tax credit projects with Eric McClelland and Don Snyder while the latter two individuals were principals of Apollo Housing Capital, LLC. After Apollo was acquired by Royal Bank of Canada, McClelland left Apollo and formed RSEP. Moeller continued to work with the principals of RSEP and its affiliates, including Snyder (Vice President of Red Stone Equity Partners, LLC) and McClelland (Managing Director of RSEP). Moeller testified in his affidavit that the Zurich Project was no different than other affordable senior housing projects the same principals had been involved with before insofar as the relationship between investor and developer was documented. In each project, once an allocation of tax credits was awarded by the IHDA, the investor (here, RSEP)

provided funds to assist in the acquisition of land in the form of a pre-development loan; once the investor was admitted to the limited partnership, the pre-development loan converted to equity. Thus, the only evidence in the record regarding the course of dealing between the parties precludes the entry of summary judgment for RSEP.

Lastly, Defendants dispute RSEP's compound interest calculations, contending that the Note does not provide for compound interest. RSEP responds by asserting that it only seeks accrued interest on the $660,000.00 face value of the Note and has calculated the amount it seeks according to the simple interest method suggested by Defendants. Because I am denying summary judgment, I need not consider this issue at this time.

## IV. Conclusion

The dispute regarding the nature of RSEP's $660,000 pre-development payment presents a genuine issue of material fact, precluding the entry of summary judgment on the record before me. Therefore, RSEP's motion for summary judgment is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: September 11, 2009